**LITHUANIAN COMMERCE CORPORATION LTD.,**
Plaintiff,

v.

**SARA LEE HOSIERY**, Sara Lee Hosiery International, Sara Lee International and Sara Lee Corporation, Defendants.

**SARA LEE HOSIERY**, Sara Lee Hosiery International and Sara Lee Corporation, Counterclaim Plaintiffs,

v.

**LITHUANIAN COMMERCE CORPORATION LTD.,** Counterclaim Defendant,

**Algis Vasys and Laima Zajanckauskiene,** Third–Party Defendants.

No. 96–1949.

United States District Court, D. New Jersey.

Nov. 26, 1997.

Order affirmed in part and reversed in part.

Gregory D. Saputelli, James R. Thompson, Obermayer, Rebmann, Maxwell & Hippel, Haddonfield, NJ, for Lithuanian Commerce Corporation Ltd., Algis Vasys and Laima Zajanckauskiene.

Diane E. Brehm, Camden, NJ, Carl W. Hittinger, Lance Lewis, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, PA, for Sara Lee Hosiery, Sara Lee Hosiery International, Sara Lee International, and Sara Lee Corporation.

## OPINION

ORLOFSKY, District Judge.

This is an appeal from a magistrate judge's order imposing sanctions for Appellants' eleventh hour substitution of expert witnesses in a commercial dispute over the distribution and sale of pantyhose manufactured by Appellees in Mexico and shipped to Appellants in Lithuania. This appeal presents a procedural issue which appears to have eluded resolution in the Circuit Courts of Appeals: whether a party's failure to raise issues before a magistrate judge in the first instance constitutes a waiver of those issues on appeal to the district court from the magistrate judge's determination of a non-dispositive issue? For the reasons which follow, I conclude that it does.

During discovery in this case, the Honorable Joel B. Rosen, United States Magistrate Judge, extended the deadline for Appellants to serve their expert witness reports several times. The final scheduling order established a firm date for serving expert witness reports and explicitly warned that violations would result in the exclusion of expert witness testimony and the imposition of sanctions pursuant to the Federal Rules of Civil Procedure.

Despite the extensions and the warning, however, and after the expiration of the final deadline, Appellants moved for leave to substitute a new expert witness in place of their previously identified primary expert who had already been deposed by Appellees. In an effort to move this case to a trial on its merits, the magistrate judge accommodated this request and granted the motion. The magistrate judge conditioned his ruling, however, on Appellants' payment of the expenses and attorneys' fees incurred by Appellees as a result of the substitution of the new expert.

Appellants never objected to this disposition by the magistrate judge and, in fact, appeared appropriately grateful for the court's permission to use their last-minute expert witness. In letters to the court re-

questing a reduction in the amount of the sanctions, Appellants even acknowledged the magistrate judge's authority to impose the alternative monetary sanctions. Nevertheless, Appellants now attempt to reverse their litigation strategy and seek relief from those sanctions by way of an appeal to this Court.

As explained below, such dilatory conduct cannot be allowed. Because Appellants failed to present their objections to the magistrate judge in the first instance, I will not consider them on this appeal and the order of the magistrate judge imposing sanctions will be affirmed. This matter will be remanded to the magistrate judge, however, for a determination of the reasonable expenses and attorneys' fees incurred by Appellees.

## I. BACKGROUND

On April 29, 1996, Lithuanian Commerce Corporation Ltd. filed this action against Sara Lee Hosiery, Sara Lee Hosiery International, Sara Lee International and Sara Lee Corporation (collectively "Sara Lee"). Sara Lee filed a counterclaim and third-party complaint against Lithuanian Commerce Corporation Ltd. and two of its principals, Algis Vasys and Laima Zajanckauskiene (collectively "LCC"). Pursuant to Rule 16 of the Federal Rules of Civil Procedure and Local Civil Rule 72.1, Magistrate Judge Rosen was assigned to supervise pre-trial discovery in this case.

On June 26, 1996, Magistrate Judge Rosen entered Scheduling Order No. 1 which established September 16, 1996, as the date by which all of LCC's expert reports were to be served on Sara Lee's counsel. Subsequent scheduling orders extended this date to December 31, 1996, and again to April 15, 1997. *See* Scheduling Order No. 2, dated October 30, 1996; Scheduling Order (the "Final Scheduling Order"), dated March 21, 1997.

Each of these scheduling orders set forth LCC's deadline for serving expert reports in a paragraph which included the sentence: "No expert opinion testimony shall be admitted at trial with respect to any witness for whom this procedure has not been timely followed." Moreover, each of these scheduling orders warned, in boldface capital letters: *"THE FAILURE OF A PARTY OR AT-TORNEY TO OBEY THIS ORDER MAY RESULT IN IMPOSITION OF SANCTIONS UNDER RULE 16(f), FED. R. CIV. P."*

During the course of discovery, LCC identified a total of seven expert witnesses. LCC first identified Dr. Byiung Jun Park as its product expert, but subsequently terminated his services and identified Julius Hyman ("Hyman") as its primary product expert. LCC later named three Lithuanians and Dr. Joseph Zimmerman as additional expert witnesses. These maneuvers caused LCC to request several extensions of the deadline for the completion of expert discovery, all of which were granted by Magistrate Judge Rosen.

On February 28, 1997, at a hearing before Magistrate Judge Rosen, Gregory Saputelli, Esq., counsel for LCC, represented that LCC had provided its final expert report. *See* Sara Lee's Ex. G at 33. In fact, when Sara Lee requested an extension, counsel for LCC "vigorously objected to any extension of time" for Sara Lee to serve its expert reports. Letter from James R. Thompson, Esq., dated March 25, 1997, Sara Lee's Ex. L at 2. That letter further stated that LCC "does not require an extension." *Id.*

Nevertheless, on July 3, 1997, LCC filed a motion for leave to substitute a new expert witness, Dr. Bernard Miller, in place of Hyman. The motion was referred to Magistrate Judge Rosen pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Civil Rule 72.1. According to LCC, LCC learned that Hyman was unfit and unqualified to serve as an expert witness in this case at his deposition on June 19, 1997. Hyman resigned the day after his deposition. Certification of Mr. Thompson in Support of Motion for Leave to Utilize Substitute Expert Witness, LCC's Ex. 1, at 5. Sara Lee objected to this motion primarily on the ground that LCC could have, and should have, known of such serious problems with its own key witness much earlier.

This motion presented the first of three opportunities before Magistrate Judge Rosen for LCC to object to the imposition of sanctions. LCC filed its motion because the

scheduling orders entered by Magistrate Judge Rosen and the Federal Rules of Civil Procedure would have otherwise precluded the use of a new expert's report and testimony almost three months after the end of expert discovery. *See* Memorandum of Law in Support of LCC's Motion for Leave to Utilize Substitute Expert Witness, LCC's Ex. 2, at 6 (reciting factors relevant to determining whether to permit testimony by a witness identified "in an untimely manner").

Magistrate Judge Rosen then convened a hearing on July 22, 1997, at which LCC's motion was discussed at length and at which LCC had ample opportunity to object on the record to the imposition of sanctions. The magistrate judge expressed his concern to Mr. Saputelli that, "[i]n reliance on your expert report [Sara Lee's counsel], number one, deposed [Hyman]; number two, retained an expert who prepared a report responsive to that person.... [W]hat about prejudice to them in terms of just economics; why should their client have to pay for this?" Transcript of Hearing before Hon. Joel B. Rosen on July 22, 1997 ("Hearing Tr.") at 10. The magistrate judge elaborated on the fact that LCC itself had selected Hyman, apparently in error, and that LCC should bear the burden of this last minute substitution.

At the hearing, Magistrate Judge Rosen ultimately decided to grant LCC's motion for leave to substitute its new expert witness so long as LCC would pay Sara Lee's consequent expenses including attorneys' fees. At no point during this hearing did any representative of LCC object to the magistrate judge's determination. In fact, Magistrate Judge Rosen concluded by informing Mr. Saputelli that "I'm going to shift the costs here because I think that any prejudice to you has been caused by your own decision-making. Maybe you'll have to recoup this from your first expert." *Id.* at 14. Even then, Mr. Saputelli responded only: "We may." *Id.*

Magistrate Judge Rosen entered an order dated July 24, 1997 (the "July Order"), reducing his oral resolution of this issue to writing. In the July Order, Magistrate Judge Rosen determined that LCC violated the "spirit and intent" of the Federal Rules of Civil Procedure and imposed sanctions on LCC pursuant to Rule 16 of the Federal Rules of Civil Procedure which incorporates Rule 37 by reference. Magistrate Judge Rosen further noted that, as an alternative basis for his ruling, sanctions were authorized by the court's inherent powers.[1] Magistrate Judge Rosen required, as a condition of the requested relief, that LCC pay "[a]ll fees and costs incurred by [Sara Lee] due to [LCC's] utilization of a substitute expert." July Order at 4–5.

At this point, with the record virtually identical to the record on appeal, LCC objected to the *amount* of the sanctions but still elected not to object to the *imposition* of sanctions. LCC wrote to Magistrate Judge Rosen "to request that you reconsider the extent and magnitude of the sanctions imposed as a condition of granting LCC's Motion for Leave to Utilize Substitute Expert Witness." Letter from Mr. Thompson, dated August 6, 1997 ("August 6 Letter"), LCC's Ex. 6, at 1. In that letter, however, LCC's counsel stated that "[w]e understand the reason for the imposition of sanctions" and objected only that "the extent of the sanctions imposed is clearly excessive, unreasonable and inherently unfair." *Id.* LCC argued that it should "be responsible for Defendants' fees and costs incurred with respect to *either* Mr. Hyman or Dr. Miller, *but not both.*" *Id.* at 2 (emphases in original).

On August 6, Sara Lee submitted a Statement of Fees and Costs in accordance with the July Order requesting payment by LCC of $74,311.76 (the "Fee Statement"). *See* LCC's Ex. 5. The Fee Statement took the form of a motion rather than an affidavit or certification. *See Id.* Upon receipt of the Fee Statement, LCC supplemented its letter

---

**1.** I note that, in essence, the July Order did not require LCC to pay any money whatsoever to Sara Lee; rather, it granted LCC's motion for leave to substitute expert witnesses, despite the clear mandate of the Final Scheduling Order, conditioned only on its payment of Sara Lee's associated expenses. Thus, LCC could have proceeded in this litigation without paying Sara Lee by relying on its original expert witnesses. LCC has, in effect, objected to the imposition of a sanction which was a consequence of its own choice.

brief to the court. Supplementary Letter from Mr. Thompson, dated August 6, 1997 ("August 6 Supp."), LCC's Ex. 6. LCC referred to the amount claimed as "shocking" and noted that the attorneys' billable rates were excessive for the Southern New Jersey region. *See Id.* In addition, LCC "argued that some reasonable limits must be placed upon the sanctions imposed" lest Sara Lee have "free rein" to bill for any amount. *Id.* LCC pointed out that it did not even have the benefit of a detailed billing statement to discern the particular tasks billed to Sara Lee.

Magistrate Judge Rosen treated LCC's August 6 Letter as a motion for relief from judgment pursuant to Rule 60(b) and issued a clarifying order, dated August 18, 1997 (the "August Order"). The August Order vacated the July Order *"only* to the extent that it requires the plaintiff to pay the legal and expert fees and costs incurred by the defendants in taking Dr. Bernard Miller's deposition." August Order at 6 (emphasis in original). In denying LCC's motion in all other respects, Magistrate Judge Rosen held that "in keeping with this court's goal of making the defendants whole, this court shall not pass upon the reasonableness of the fees and costs incurred by the defendants as a result of the substitution of the plaintiff's expert." *Id.* at 5. This appeal ensued.

## II. DISCUSSION

The Federal Magistrates Act of 1968 (the "FMA") created the position now known as magistrate judge and allowed district courts to refer a host of matters to magistrate judges for determinations subject to various levels of review by the district courts. *See* 28 U.S.C. § 636(b)(1). Congress has amended the FMA several times to expand the scope of magistrate judges' duties in order to alleviate growing burdens on district courts. *See, e.g.,* H.R.Rep. No. 94–1609 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6162; *see generally* 12 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure: Civil 2d § 3066.

▮ Subparagraph A of § 636(b)(1) provides for a district court to review a magistrate judge's determination of a non-dispos-

itive issue while subparagraph B governs review of a report and recommendation concerning a dispositive issue. The Federal Rules of Civil Procedure and the Local Civil Rules of the District of New Jersey each contain corresponding provisions. *See* Fed. R.Civ.P. 72(a), 72(b); Local Civ. R. 72.1(c)(1), 72.1(c)(2). Magistrate Judge Rosen's order concerning the admissibility of testimony and monetary sanctions is clearly not dispositive of any claim and is therefore subject to the provisions of subparagraph A. *See, e.g., Thomas E. Hoar, Inc. v. Sara Lee Corp.,* 900 F.2d 522, 525 (2d Cir.) (treating sanction order pursuant to Rule 37 as non-dispositive), *cert. denied,* 498 U.S. 846, 111 S.Ct. 132, 112 L.Ed.2d 100 (1990).

### A. Waiver

#### 1. Does LCC's Failure to Assert Grounds for Relief before the Magistrate Judge in the First Instance Constitute a Waiver of Those Grounds on Appeal to the District Court?

▮ LCC appeals from Magistrate Judge Rosen's order granting LCC's motion for leave to substitute expert witnesses. *See* Fed.R.Civ.P. 72(a); Local Civ. R. 72.1(c)(1)(A). On appeal, however, LCC asserts several grounds for relief which were never presented to the magistrate judge, thereby depriving him of the opportunity to rectify his own alleged errors. I find that, by failing to preserve its objections to the magistrate judge's non-dispositive order below, LCC has indeed waived its right to present them on appeal to this Court.

Although not briefed as a separate legal argument, Sara Lee raised the issue of waiver in its opposition papers. *See, e.g.,* Sara Lee's Brief at 2 (summarizing arguments including argument that "at no time during the hearing at which these sanctions were rendered did LCC object to or argue against the Court's ruling to shift the costs and fees incurred by Sara Lee as a result of LCC's prejudicial action"). Moreover, this issue comes as no surprise to LCC given that LCC has explicitly acknowledged its applicability to this very appeal. *See* LCC's Brief at 31 n.

1 ("Since the issue of disqualification was not presented to the Magistrate Judge for consideration by Motion, it will not be presented for the first time in this appeal.").[2]

The Third Circuit has not addressed this precise issue but my conclusion is consistent with, if not suggested by, a line of Third Circuit decisions involving a failure to object in the district court to a magistrate judge's rulings prior to appealing to the Third Circuit. These cases suggest the general proposition that a party's failure to present timely objections may waive grounds for appeal of non-dispositive rulings by a magistrate judge.

In *Henderson v. Carlson*, 812 F.2d 874 (3d Cir.), *cert. denied*, 484 U.S. 837, 108 S.Ct. 120, 98 L.Ed.2d 79 (1987), the court held that a party does not waive its right to appeal a magistrate judge's dispositive ruling to that court by failing to object in the district court. As a result, the court concluded that a district court should review a magistrate judge's ruling on a dispositive issue even absent objections in the district court to the report and recommendation. *Id.* at 878. In *Siers v. Morrash*, 700 F.2d 113 (3d Cir.1983), however, the court had held that a party waived its right to appeal a non-dispositive order of the magistrate judge to the Third Circuit where it failed to object in the district court.

These cases were reconciled in *United Steelworkers of America v. New Jersey Zinc Co.*, 828 F.2d 1001 (3d Cir.1987). In that case, the court faced the same situation presented by *Siers*—the appeal of a magistrate judge's non-dispositive order on grounds not presented to the district court—and reaffirmed the holding of *Siers*. The court found that "[w]hen considering whether a party who has failed to object to a magistrate's ruling has waived its objections, the opinions of this court distinguish between the two categories of matters referred to magistrates." *Id.* at 1005. The court explained that:

> The statutory language makes clear the differing roles of the magistrate with respect to the different categories of reference. In the case of subparagraph (A) references, the magistrate's order is dispositive unless the district court takes some action to overrule it.... In contrast, a magistrate to whom a motion has been referred under subparagraph (B) acts merely as a recommender. Only the district court's entry of an order can put the proposed recommendation into effect.

*Id.*

The court distinguished *Henderson* as holding that "in the absence of objections ... the better practice is for the district judge to afford some level of review to *dispositive* legal issues raised by the report." *Id.* at 1006 (quoting *Henderson*, 812 F.2d at 878, and adding the emphasis). The court pointed out that, in contrast, "[w]e have treated nondispositive matters referred to a magistrate under subparagraph (A) differently, and have expressly stated that a party's failure to object to a magistrate's ruling waives the party's objection." *Steelworkers*, 828 F.2d at 1006.

At least two courts in this district have specifically held that failure to present objections to a magistrate judge on a non-dispositive ruling waives those objections on appeal to the district court. In *Health Corp. of America v. New Jersey Dental Association*, 77 F.R.D. 488 (D.N.J.1978), Judge Brotman affirmed a magistrate judge's denial of the defendants' motion to file an omitted counterclaim. On appeal, the defendants argued for the first time that the counterclaim was compulsory and that, therefore, denying the

---

2. Alternatively, LCC's tactic of asserting new arguments on appeal to this Court, at the expense of both Sara Lee and the judicial system, makes this an appropriate issue for the Court to raise *sua sponte*. *See In re Cassidy*, 892 F.2d 637, 641 (7th Cir.) (dismissing an entire claim *sua sponte* based on judicial estoppel because that doctrine "is intended to protect the courts rather than the litigants, so it follows that a court, even an appellate court, may raise the estoppel on its own motion in an appropriate case") (footnote omit-

ted), *cert. denied*, 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990); *Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir.) (affirming *sua sponte* dismissal of entire claim based on res judicata grounds as "not only appropriate but virtually mandatory in this case, whether or not the appellees raised res judicata" because that doctrine is "founded in part on the strong public interest in economizing the use of judicial resources"), *cert. denied*, 510 U.S. 902, 114 S.Ct. 278, 126 L.Ed.2d 229 (1993).

motion might preclude them from ever asserting that claim. After discussing the FMA's goal of decreasing the burden on district courts, Judge Brotman declined to consider the defendants' argument even though "it is quite possible that it would have been determinative of a result in their favor." *Id.* at 491.

Judge Brotman held that "[s]ince this argument was not presented to the Magistrate for his consideration before decision, the court will not consider it now." *Id.* at 492. This conclusion was necessary because "[a] contrary result would undermine the rationale of the recent Magistrate Act amendments and would increase, rather than alleviate, the burden of the trial judge in pre-trial matters." *Id.*

Judge Fisher applied this principle more recently in *Jordan v. Tapper*, 143 F.R.D. 567 (D.N.J.1992). In that case, the plaintiff appealed the magistrate judge's denial of his motion for leave to amend the complaint asserting that magistrate judges have no jurisdiction over motions to amend. In reviewing the appeal, Judge Fisher held that "because plaintiff did not raise this jurisdictional objection before the magistrate judge he has waived his right to assert it here." *Id.* at 570.

The *Jordan* court cited the line of cases establishing that, absent compelling circumstances, an appellate court will not address issues which were not presented to the trial court. *Id.* (citing, e.g., *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Steelworkers*, 828 F.2d 1001). Judge Fisher noted that "[a] similar rationale has been applied to require parties who are before a magistrate judge to raise any and all arguments before the magistrate, and not wait to raise new arguments before the district court." *Jordan*, 143 F.R.D. at 570.[3]

Judge Fisher was persuaded by the underlying policy considerations and found that:

Common sense and efficient judicial administration dictate that a party should not be encouraged to make a partial presentation before the magistrate on a major motion, and then make another attempt entirely when the district judge reviews objections to an adverse recommendation issued by a magistrate.

*Id.* at 571 (quoting *Anna Ready Mix, Inc. v. N.E. Pierson Construction Co.*, 747 F.Supp. 1299 (S.D.Ill.1990)). Judge Fisher concluded that "[t]here is no doubt that if plaintiff truly objected to the jurisdiction of the magistrate ... he should have raised the issue with the court below. Jordan did not, and, therefore, has waived his right to raise the issue here." *Jordan*, 143 F.R.D. at 571.

Other district courts have similarly held that "[r]eview of a Magistrate's ruling before the District Court does not permit consideration of issues not raised before the Magistrate" because the "magistrate's decision should not be disturbed on the basis of arguments not presented to him." *Jesselson v. Outlet Associates of Williamsburg, Limited Partnership*, 784 F.Supp. 1223, 1228 (E.D.Va. 1991) (affirming *in limine* exclusion of evidence); *accord Mitchell v. Consolidated Freightways Corp. of Delaware*, 747 F.Supp. 1446, 1447 (M.D.Fla.1990) (disregarding arguments on appeal of magistrate judge's nondispositive ruling where "Defendant did not present these grounds to the Magistrate" because his "decision should not be disturbed on the basis of arguments not presented to him").

I am persuaded by these authorities and by the sound policies of "common sense and efficient judicial administration" which underlie their holdings. As previously noted, even LCC itself acknowledged this general principle. *See* LCC's Brief at 31 n. 1. Therefore, I will not consider any arguments which LCC did not present to Magistrate Judge Rosen in the first instance. In the apt words of Judge Fisher, "if [LCC] truly ob-

---

**3.** This rule has also been applied by district courts reviewing appeals from bankruptcy courts. *See In re Y.J. Sons & Co.*, 212 B.R. 793, 806–07 (D.N.J.1997) (holding that party waived objection to imposition of Rule 11 sanctions without considering its ability to pay where "[t]he issue was not raised before the Bankruptcy Court and is raised only in the most conclusory fashion on appeal"); *Hutchins v. Commonwealth Mortgage Corp.*, 165 B.R. 401, 405 (E.D.Pa.1994) ("Commonwealth could have raised the merger argument in bankruptcy court but failed to do so. Therefore, Commonwealth has waived its right to raise this issue on appeal.").

jected ... [it] should have raised the issue with the court below. [LCC] did not, and, therefore, has waived [its] right to raise the issue here." *Jordan*, 143 F.R.D. at 571.

### 2. Grounds Preserved by LCC

Of the various arguments put forth by LCC on appeal, LCC failed to present all but two of them to the magistrate judge in the first instance. LCC specifically requested that Magistrate Judge Rosen determine the reasonableness of the amount of expenses and attorneys' fees awarded. *See* August 6 Supp. LCC also raised general objections to the amount and extent of the sanctions before the magistrate judge. *See* August 6 Letter; August 6 Supp. Giving LCC the benefit of a broad interpretation of its arguments, I find that LCC preserved its objection to Magistrate Judge Rosen's failure to consider LCC's ability to pay the sanctions. As these issues were properly preserved, I will address their merits hereafter. *See infra* Part II.B.

LCC never presented any other ground for relief to the magistrate judge in the first instance. On appeal, however, LCC asserts the following additional grounds for reversal: (1) that sanctions were imposed pursuant to the court's inherent powers without due process of law; (2) that LCC's conduct was substantially justified; (3) that Sara Lee was not prejudiced by the last-minute substitution; (4) that LCC did not technically violate a court order; (5) that sanctions pursuant to the court's inherent powers were inappropriate absent a finding of bad faith; and (6) that Magistrate Judge Rosen erred by permitting Sara Lee to call Hyman as a witness at trial.[4]

LCC had more than adequate opportunities on the record to present all of its objections to Magistrate Judge Rosen. The record shows that LCC communicated directly with the court on the issue of sanctions on three distinct occasions, in addition to its ability to file motions on its own initiative. An examination of LCC's three interactions with Magistrate Judge Rosen illustrates the deliberate litigation strategy employed by LCC and the consequent waiver of its rights on appeal to this Court.

First, LCC itself moved the court for leave to substitute expert witnesses. That motion

---

4. I note that each of these arguments would also fail on its merits. First, LCC claims a due process violation in the imposition of sanctions pursuant to the court's inherent powers. Even if LCC was not on notice of such sanctions, however, Magistrate Judge Rosen sanctioned LCC pursuant to the Federal Rules of Civil Procedure, relying upon his inherent authority only as an alternative basis for his ruling. Second, LCC argues that its "noncompliance was substantially justified." *See* Fed.R.Civ.P. 16(f). LCC itself, however, defines substantial justification as when "there exists a genuine dispute concerning *compliance.*" LCC's Brief at 19 (quoting *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)) (emphasis added). Here, LCC moved on July 3, 1997, for leave to serve a new expert's report when the Final Scheduling Order required this to be done by April 15, 1997. Thus, LCC undeniably failed to comply with the court's order and, by its own definition, has failed to demonstrate substantial compliance. Moreover, LCC's conduct could hardly be considered justified when, as Magistrate Judge Rosen found, it was "caused by [LCC's] own decision-making." Hearing Tr. at 14.

Third, LCC asserts that Sara Lee suffered no harm as a result of its last-minute substitution of primary expert witnesses because Dr. Miller's report was similar to Hyman's report. Unless Sara Lee is willing to accept LCC's representations, however, it is safe to assume that at a

minimum Sara Lee must engage its experts to review the report and respond. To the extent that less testing or other responses are required, this distinction is relevant only to the amount of sanctions. Fourth, LCC argues that it did not technically violate a court order. Had LCC submitted Dr. Miller's report or attempted to use his testimony at trial, LCC would have violated the Final Scheduling Order; LCC, however, essentially moved for leave to violate that order. This will not preclude sanctions. Fifth, LCC asserts that the court below lacked authority to impose sanctions pursuant to its inherent powers because it did not find that LCC acted in bad faith. As noted previously, I would affirm the sanctions under the Federal Rules of Civil Procedure without regard to the court's inherent powers.

Finally, LCC argues that Magistrate Judge Rosen erred by allowing Sara Lee to call Hyman as a witness at trial because his testimony would violate the attorney-client privilege and the work-product doctrine. Magistrate Judge Rosen's order, however, only permits Hyman to testify about discoverable matters as a fact witness, not as an expert witness. *Compare Cordy v. Sherwin–Williams Co.*, 156 F.R.D. 575, 580 (D.N.J. 1994) (absent exceptional circumstances, "courts could not permit *opinion-testimony* by an expert originally consulted by an adversary") (emphasis added), *cited in* LCC's Brief at 31–32. Any specific testimonial privileges may be asserted at trial.

recognized that the Final Scheduling Order would otherwise preclude the late substitution and therefore essentially requested that the court decline to impose sanctions. The explicit language of the Final Scheduling Order warned that failure to provide all expert witness reports by April 15, 1997 would result in exclusion of the expert witness' testimony at trial and in Rule 16(f) sanctions; nevertheless, LCC elected only to argue that the substitution was necessary because Hyman was unqualified and unfit to serve as an expert witness.

Second, Magistrate Judge Rosen held a hearing on the record regarding this motion. At the hearing, LCC sought leave of court for permission to use Dr. Miller's testimony to salvage its case. Magistrate Judge Rosen saw fit to permit this, requiring only that LCC pay Sara Lee's additional expenses incurred as a result of the substitution. When Magistrate Judge Rosen asked counsel for LCC why Sara Lee should have to pay for the additional discovery, Mr. Saputelli responded only that LCC would be prejudiced if the motion were not granted. Hearing Tr. at 10. Mr. Saputelli did not, at this or any other point, argue that LCC should not be required to reimburse Sara Lee.

Mr. Saputelli also told the court: "I don't want to invite sanctions, Your Honor, but we understand the Court's concern on the economic concern." *Id.* at 12. When the magistrate judge informed Mr. Saputelli of his decision to shift the fees and suggested that LCC may have to recoup those costs from Hyman, Mr. Saputelli replied only: "We may." *Id.* at 14. At no point during this hearing did any representative of LCC ever object to the imposition of costs as a consequence of permitting the use of Dr. Miller's testimony. Instead, Mr. Saputelli thanked the court for its conditional grant of LCC's motion.

Finally, after Judge Rosen issued the July Order, LCC wrote a series of letters to the court concerning the sanctions. At that time, LCC knew that Magistrate Judge Rosen was imposing sanctions and that he had resorted in part to the court's inherent power to sanction. In addition, LCC knew the precise conduct for which the sanctions were imposed. LCC has no excuse for failing to assert its objections at that time. In fact, far from objecting, LCC conceded the propriety of sanctions. In the words of its counsel, LCC did "not dispute the authority of the Court to impose both compensatory and punitive monetary sanctions." Letter from Mr. Thompson, dated August 13, 1997, LCC's Ex. 8 at 2; *see also* August 6 Letter at 1 ("[w]e understand the reason for the imposition of sanctions").

Thus, LCC had ample opportunity to raise its other objections before Magistrate Judge Rosen but chose not to do so. I find that LCC's failure to present these objections to the magistrate judge constitutes a waiver of its right to assert them on appeal. Therefore, on this appeal I will consider only LCC's arguments that the award of costs must be reasonable and that the magistrate judge should consider LCC's ability to pay as a factor in imposing sanctions.

**B. The Reasonableness of the Fee Award**

**1. Standard of Review**

The FMA provides that a district court may reverse a magistrate judge's determination of a non-dispositive issue only if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *accord* Fed.R.Civ.P. 72(a); Local Civ. R. 72.1(c)(1); *see, e.g., Cipollone v. Liggett Group. Inc.,* 785 F.2d 1108, 1113 (3d Cir.1986).

Thus, this Court will review a magistrate judge's findings of fact for clear error. *Lo Bosco v. Kure Engineering Ltd.,* 891 F.Supp. 1035, 1037 (D.N.J.1995). A finding is clearly erroneous only "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). In reviewing a magistrate judge's factual determinations, a district court may not consider any evidence which was not presented to the magistrate judge. *Haines v. Liggett Group. Inc.,* 975 F.2d 81, 92 (3d Cir.1992).

■ On the other hand, this Court will conduct a *de novo* review of a magistrate judge's legal conclusions. *Haines,* 975 F.2d at 91 ("the phrase 'contrary to law' indicates plenary review as to matters of law"); *accord Lo Bosco,* 891 F.Supp. at 1037 ("this Court's review is plenary as to matters of law"); *see Campbell v. International Business Machines,* 912 F.Supp. 116, 119 (D.N.J.1996) ("a district court reviews the nondispositive order of a magistrate judge for legal error or clearly erroneous findings of fact").

■ Where a magistrate judge is authorized to exercise his or her discretion, the decision will be reversed only for an abuse of that discretion. *See Kresefky v. Panasonic Communications and Systems Co.,* 169 F.R.D. 54, 64 (D.N.J.1996) ("Where, as here, the magistrate has ruled on a non-dispositive matter such as a discovery motion, his or her ruling is entitled to great deference and is reversible only for abuse of discretion."); *see also* 12 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure: Civil 2d § 3069 ("many matters such as discovery scheduling or disputes might better be characterized as suitable for an abuse-of-discretion analysis"). This deferential standard is "especially appropriate where the Magistrate Judge has managed this case from the outset and developed a thorough knowledge of the proceedings." *Public Interest Research Group v. Hercules, Inc.,* 830 F.Supp. 1525, 1547 (D.N.J.1993), *aff'd on other grounds and rev'd on other grounds,* 50 F.3d 1239 (3d Cir.1995).

### 2. The Merits

#### a. Reasonableness of the Sanctions

In the August Order, Magistrate Judge Rosen held that, "in keeping with this court's goal of making the defendants whole, this court shall not pass upon the reasonableness of the fees and costs incurred by the defendants as a result of the substitution of the plaintiff's expert." I find, however, that as a

matter of law the award of expenses and attorneys' fees must be reasonable regardless of Sara Lee's actual expenses.

The language of the Federal Rules of Civil Procedure explicitly incorporates the reasonableness standard in awarding monetary sanctions. *See* Fed.R.Civ.P. 16(f) ("reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees"); Fed.R.Civ.P. 37(b)(2) ("reasonable expenses, including attorney's fees").

In the analogous context of Rule 11 sanctions, the Third Circuit has determined that fees must be reasonable rather than actual. Rule 11 uses language similar to Rules 16 and 37 in providing for the imposition of "reasonable attorneys' fees and other expenses." Fed.R.Civ.P. 11(c)(2). The Third Circuit has interpreted this language to mean fees which "are fair and reasonable in the particular circumstances—not necessarily actual fees." *Gaiardo v. Ethyl Corp.,* 835 F.2d 479, 483 (3d Cir.1987); *see Childs v. State Farm Mutual Automobile Ins., Co.,* 29 F.3d 1018, 1027 (5th Cir.1994) ("[a]ctual expenses and attorney's fees are not necessarily reasonable" under Rule 11).

■ At least one court has explicitly applied Rule 11's reasonableness requirement to sanctions imposed pursuant to Rule 37. *Gordon v. New England Tractor Trailer Training School,* 168 F.R.D. 178, 180 (D.Md. 1996) ("While those factors have, to this Court's knowledge, never been applied in connection with sanctions awarded pursuant to Rule 37(d), such application appears appropriate because Rule 37, much like Rule 11, is designed to deter future misconduct during discovery."). Another court reached the same conclusion with respect to Rule 16. *Kiser v. Boeing Co.,* 163 F.R.D. 13 (D.Kan. 1995). Thus, I find that when imposing monetary sanctions pursuant to Rule 16 or Rule 37, a court may only award reasonable expenses and attorneys' fees.[5]

---

5. Like the Federal Rules of Civil Procedure, the inherent powers of federal courts permit them "to impose reasonable sanctions." *Eash v. Riggins Trucking, Inc.,* 757 F.2d 557, 567 (3d Cir. 1985); *see Itel Containers International Corp. v. Puerto Rico Marine Management, Inc.,* 108 F.R.D. 96, 106 (D.N.J.1985) (the *Eash* court "repeatedly referred to 'a modest' or 'a reasonable' sanction"); *see also Roberts v. Lyons,* 131 F.R.D. 75, 82 (E.D.Pa.1990) ("The inherent power of a court to manage its affairs necessarily includes the authority to impose reasonable appropriate

In these circumstances, courts must determine the reasonableness of expenses and attorneys' fees at least by requiring affidavits setting forth such costs and permitting an opportunity to respond. In *Pesaplastic, C.A. v. Cincinnati Milacron Co.,* 799 F.2d 1510 (11th Cir.1986), the court held that, in addition to an opportunity to contest the *imposition* of Rule 37 sanctions, due process requires that "the parties have an opportunity to ... submit affidavits on the *amount* of such fees and costs, with an opportunity for the sanctioned party to file a motion challenging said affidavits." *Id.* at 1522 (citing *United States v. Asay,* 614 F.2d 655 (9th Cir.1980)) (emphasis added); *see Ocelot Oil Corp. v. Sparrow Industries,* 847 F.2d 1458, 1464 (10th Cir.1988) (citing cases)

In *McFarland v. Gregory,* 425 F.2d 443 (2d Cir.1970), the Second Circuit affirmed a district court's imposition of sanctions on the defendants pursuant to Rule 37(b)(2) for producing certain records under unsuitable conditions for review by the plaintiff's accountants. The Second Circuit approved of the district court's choice of sanction requiring that the defendants pay "the difference between actual cost of the accountants' work and what reasonable costs would have been had the accountants had a proper working environment." *Id.* at 449–50.

The appeals court, however, remanded the matter to the district court for an assessment of the fees because "the trial court should have afforded defendants an opportunity of a hearing on the scope and cost of their default before imposing a proper penalty therefor." *Id.* at 450; *see also Admiral Theatre Corp. v. Douglas Theatre Co.,* 585 F.2d 877, 899 (8th Cir.1978) (affirming award of attorneys' fees and office expenses pursuant to Rule 37(b)(2) as "reasonable expenses" for conducting second deposition of expert witness in lieu of precluding witness' testimony); *Pizza Management, Inc. v. Pizza Hut, Inc.,* 1989 WL 9334 (D.Kan. Jan. 10, 1989) (reversing magistrate judge's imposition of Rule 37(a)(4) attorneys' fees at the actual out-of-state rate and substituting the local hourly rate because Rule 37 has the same goal as 42 U.S.C.

§ 1988 and other fee-shifting provisions: "the determination of a fair and reasonable amount under the circumstances").

Thus, the language of the Federal Rules of Civil Procedure and the language and authority of judicial decisions, as well as a sense of fairness, requires that the sanctions imposed on LCC be reasonable. Therefore, I must vacate Magistrate Judge Rosen's orders as to this issue and remand this matter to him for a determination of reasonable sanctions consistent with this opinion.

### b. Ability to Pay

On remand, the magistrate judge should also consider LCC's ability to pay the amount of the sanctions which he ultimately imposes. *See Gordon,* 168 F.R.D. at 180 (citing "the ability to pay" as one of four factors which should be considered when imposing sanctions pursuant to Rule 37); *Kiser,* 163 F.R.D. at 15 (citing "ability to pay" as one of four factors which should be considered when imposing sanctions pursuant to Rule 16); *see also* William W. Schwarzer, *Sanctions Under the New Federal Rule 11: a Closer Look,* 104 F.R.D. 181, 203 (1985) ("ability to pay is a factor in determining reasonableness"), *quoted in Doering v. Union County Board of Chosen Freeholders,* 857 F.2d 191, 194 (3d Cir.1988). Thus, this matter will be remanded to the magistrate judge for a determination of reasonable sanctions and for consideration of LCC's ability to pay such sanctions.

### III. CONCLUSION

For the reasons set forth above, the magistrate judge's orders will be affirmed in part and reversed in part. The case will be remanded for a determination of reasonable sanctions and for consideration of LCC's ability to pay them. The Court will enter an appropriate form of Order.

---

sanctions upon errant lawyers practicing before it."). Thus, my conclusion holds true even under

the magistrate judge's alternative basis for the imposition of sanctions.