**COOPER HOSPITAL/UNIVERSITY MEDICAL CENTER, Cooper Healthcare Services, Inc., and Cooper Data Services Corporation, Plaintiffs,**

v.

**John M. SULLIVAN, et al., Defendants.**

v.

**FLEX/SYS Technology Corporation, et al., Defendants.**

CIV.A. Nos. 96–5416, 96–3182.

United States District Court, D. New Jersey.

Oct. 15, 1998.

Michael M. Rosenbaum, David J. Novack, Terrence W. Camp, Budd, Larner, Gross, Rosenbaum, Greenberg & Sade, P.C., Short Hills, NJ, Attorneys for Plaintiffs, Cooper Hospital/University Medical Center, Cooper Healthcare Services, Inc., and Cooper Data Services Corporation.

Richard S. Hyland, John W. Frazier, IV, John E. Caruso, Montgomery, McCracken, Walker & Rhoads, LLP, Cherry Hill, NJ,

Attorneys for Defendant, KPMG Peat Marwick, LLP.

John B. Kearney, Kenney & Kearney, Cherry Hill, NJ, Attorneys for Defendants, Flex/sys Corporation, Flex/sys Technology Corporation, Flex/sys (New Jersey) Corporation, Flex/sys Data Corporation–Cherry Hill, Donald G. Fellner, and Walter I. Tanenbaum.

Elliott Abrutyn, Joseph G. Dolan, Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski,Livingston, NJ, Attorneys for Defendant, Alan B. Reed.

Norman A. Bloch, Grover & Bloch, New York City, Attorneys for Defendants, Donald G. Fellner, and Walter I. Tanenbaum, in their individual capacities.

John A. Casarow, Jr., Casarow, Kienzle & Raczenbeck, Bridgeton, NJ, Attorneys for Defendant, Estate of John H. Crispo.

Nick Centrella, Conrad, Obrien, Gellman & Rohn, P.C., Moorestown, NJ, Attorneys for Defendant, Elarba Pagan.

Helene Weinstein, Stratford, NJ, pro se.

Thomas J. Damadio, Medford, NJ, pro se.

John M. Sullivan, Lewisburg, PA, pro se.

P. John Lashkevich, c/o Daniel M. Replogle, DuBois, Sheehan, Hamilton & Levin, Camden, NJ, pro se.

## OPINION

ORLOFSKY, District Judge.

Plaintiffs/Appellants, Cooper Hospital/University Medical Center, Cooper Healthcare Services, Inc., and Cooper Data Services Corporation (collectively "Cooper"), have appealed to this Court from Magistrate Judge Robert B. Kugler's order granting the application of Defendant/Appellee, KPMG Peat Marwick, LLP ("Peat Marwick"), and Defendant/Appellee, Alan B. Reed, to compel Cooper to produce a document entitled "Report of the Ad Hoc Internal Control Committee of the Board of Trustees: The Cooper Health System" ("Report").[1] In particular, Cooper appeals that portion of Magistrate Judge Ku-

---

1. This Court has jurisdiction to hear appeals from the decisions of magistrate judges pursuant to 28 U.S.C. § 636(c)(4), Rule 72(a) of the Federal Rules of Civil Procedure, and Rule 72.1(c)(2) of the Local Civil Rules.

gler's opinion in which he found that Cooper had waived the protections of the work-product doctrine by voluntarily disclosing the Report to the United States Attorney for this District and the Attorney General of the State of New Jersey.[2] The issue presented by this appeal is whether Magistrate Judge Kugler correctly held that the United States Attorney and the Attorney General of the State of New Jersey were "adversaries" of Cooper within the context of the law of the work-product privilege. This determination is critical to the resolution of this appeal because the disclosure of a document to an "adversary" waives the work-product privilege. For the reasons set forth below, I shall affirm the decision of the magistrate judge because I conclude that his finding, that the United States Government and the State of New Jersey were adversaries of Cooper, is not clearly erroneous or contrary to law. Alternatively, I hold that the Report was not prepared in anticipation of litigation, and therefore, is not protected from disclosure by the work-product privilege.

## I. FACTUAL BACKGROUND

For a period of years, prior to July, 1994, Cooper was the victim of a fraudulent scheme to embezzle millions of dollars, perpetrated by former employees who ultimately were prosecuted and convicted of the fraud. *See Cooper Hospital/University Medical Center, et al. v. Sullivan, et al.*, Nos. 96–3182, 96–5416, unpublished slip op. at 3 (D.N.J. May 7, 1998) (Kugler, Mag. J.,) (hereinafter "*Mag. Op.*"). The scheme was carried out by John M. Sullivan, Cooper's former Executive Vice President for Finance and Treasurer, and P. John Lashkevich, Cooper's former Assistant Vice President and Controller, both defendants in this case. *See Mag. Op.* at 3.

In 1993, the United States Attorney for this District began an investigation into allegations of fraud and embezzlement at Cooper. *See Mag. Op.* at 4. At that time, a federal grand jury empaneled in this District subpoenaed many of Cooper's financial and business records. *See id.* On July 20, 1994, Sullivan, Lashkevich, and John H. Crispo entered guilty pleas to federal criminal charges brought in connection with the defalcations uncovered by the federal investigation. *See id.* Even after the entry of these guilty pleas, the federal grand jury continued to subpoena documents from Cooper. *See id.*

In July, 1994, in response to the federal investigation and growing public concern over the arrests and guilty pleas of high ranking Cooper executives, Cooper's Board of Trustees appointed an Ad Hoc Committee ("Committee") to review Cooper's internal financial procedures and controls. *See* Declaration of David J. Novack, Esq., Exhibit B (filed May 22, 1998) (Peat Marwick's Brief in Support of its Application to Discover the Report ("Defs. Original Brief"), Exhibit C (Cooper Press Release dated July 26, 1994)), and Exhibit E (Peat Marwick's Reply Brief in Support of its Application to Discover the Report ("Defs. Original Reply Brief"), Exhibit A (Committee Mission Statement)). The Committee's chairman was the Honorable Warren C. Douglas, a retired New Jersey Superior Court Judge. The other members of the Committee included Rabbi Fred J. Neulander, a member of Cooper's Board of Trustees; Peter E. Driscoll, Chairman of Cooper's Board of Trustees; and Kevin Halpern, Cooper's Chief Executive Officer. *See* Novack Decl., Exh. B (Defs. Original Brief, Exh. C). Two additional positions on the Committee were reserved for representatives from the community. *See id.* The Committee met on forty or more occasions, culminating with the preparation of the Report which is the subject of this appeal. *See Mag. Op.* at 4.

On July 26, 1994, Cooper issued a press release stating that the Committee was formed in an effort "to regain public confidence in the financial operations of [Cooper]...." *See* Novack Decl., Exh. B (Defs. Original Brief, Exh. C). In addition, the press release "assured" the public that the

---

2. Magistrate Judge Kugler also held that Cooper waived any attorney-client privilege it may have had in the Report, and he denied Cooper's cross-application for a protective order, finding that Cooper had failed to demonstrate good cause. Cooper does not appeal from these portions of the opinion. A more detailed discussion of these issues is set forth in Section II, *infra*.

defalcations had not "affected the quality and comprehensiveness of the care offered by [Cooper]." *Id.* Furthermore, around this time, Cooper's Executive Vice President, Michael Dolfman, announced at a news conference that the Committee's Report would be released to the public upon completion. *See Mag. Op.* at 5.

The Mission Statement/Charge of the Committee charges the Committee with the following duties: to review existing procedures and controls; to recommend changes if needed; to assess the "institutional culture" with an eye toward re-educating employees relative to Cooper's mission; "to strengthen internal and external confidence ... [;] to recommend the commencement of appropriate legal activity to seek full restitution ... [;]" and to prepare a report recounting the Committee's conclusions and recommendations. *See* Novack Decl., Exh. E (Defs. Original Reply Brief, Exh. A).

To assist the Committee in performing its mission, Cooper retained the forensic accounting firm of Nihill & Reidley, and the law firm of Saul, Ewing, Remick & Saul, LLP, as its special counsel, to prepare the actual Report.[3] *See Mag. Op.* at 5. Nihill & Reidley scoured Cooper's financial and business records, reviewing over 100,000 pages of documents and conducting numerous interviews. *See id.* The attorneys reviewed Nihill & Reidley's findings, briefed the Committee, wrote the Report and compiled the supporting exhibits. *See id.* In April, 1995, Cooper released a two-page interim report outlining the proposed changes to its financial procedures and controls. *See* Novack Decl., Exh. D (Certification of Peter E. Driscoll ("Driscoll Cert.")), Exh. A (Committee Interim Report); *see also Mag. Op.* at 5. The full Report was completed in November, 1996, and submitted to Cooper's Board of Trustees in January, 1997. *See Mag. Op.* at 5. The completed document consisted of over 260 pages of text, three volumes of exhibits, and an executive summary. *See id.*

On February 24, 1997, Cooper distributed a prospectus in connection with a $69.4 million sale of bonds issued by the Camden County Improvement Authority. *See* Novack Decl., Exh. B (Defs. Original Brief, Exh. G (Jim Walsh, *FBI Reviews Cooper Data,* Courier–Post, March 7, 1997, at 1A)). The prospectus, which incorporated some of the same financial data used in the Report, disclosed that Cooper had sustained $3.8 million in losses resulting from the fraud and embezzlement scheme, and had recovered $3.6 million from insurance and other sources. *See id.; see also Mag. Op.* at 5. In addition, the prospectus stated that $21.8 million in expenditures were "made or controlled by and/or to" Sullivan and Lashkevich. *See Mag. Op.* at 6; *see also* Novack Decl., Exh. B (Defs. Original Brief, Exh. N (Jim Walsh, *Civil Lawsuits Seek Recovery of Millions in Cooper Fraud,* Courier–Post, Feb. 28, 1997, at 1A)).

On March 6, 1997, FBI agents obtained a copy of the prospectus from the Camden County Improvement Authority, based upon allegations that Cooper had failed to disclose the magnitude of its financial losses in violation of federal securities laws. *See* Novack Decl., Exh. B (Defs. Original Brief, Exh. G). Cooper officials assured the public that the bond sale was conducted properly. *See id.* The United States Attorney's Office for this District requested that Cooper produce a copy of the Report. *See Mag. Op.* at 7. Cooper complied, surrendering the Report on March 12, 1997. *See id.* Cooper supplied the Report under a cover letter stating that it asserted and preserved all applicable privileges regarding the Report. *See* Driscoll Cert., Exh. B (Letter from Nicholas C. Harbist, Esq., of Archer & Greiner, P.C., to the Honorable Faith S. Hochberg, United States Attorney for the District of New Jersey, dated March 12, 1997).

Shortly thereafter, on March 24, 1997, both the New Jersey Department of Human Services and the New Jersey Department of Health and Senior Services requested a copy of the Report. *See* Driscoll Cert., Exh. C

---

**3.** Cooper first retained the law firm of Ballard, Spahr, Andrews and Ingersoll, LLP, as its special counsel. *See* Novack Decl., Exh. D (Certification of Peter E. Driscoll, ¶ 7). Ballard, Spahr, howev-

er, was forced to withdraw from the representation because of a conflict of interest with another Ballard client, Arthur Anderson & Co. *See id.*

(Letter from Gary J. Lesneski, Esq., of Archer & Greiner, P.C., to Janice Mitchell Mintz, Esq., First Assistant Attorney General, dated May 14, 1997). The State agencies sought the Report to ensure that public funds paid to Cooper had been used properly. *See* Driscoll Cert., Exh. E (Maureen Graham, *Hospital Gives State Its Audit*, Phila. Inq., May 14, 1997, at B1). Governor Christine Todd Whitman cautioned Cooper that State Medicaid funding could be jeopardized by a failure to turn over the Report. *See id.*

For nearly two months, Cooper refused to surrender the Report to the State of New Jersey. *See* Driscoll Cert., Exh. C. Cooper attempted to block the State of New Jersey's request by asserting that the Report was protected by the attorney-client privilege. *See Mag. Op.* at 7. In response to Cooper's refusal to turn over the Report, on April 23, 1997, the New Jersey Attorney General's Office demanded a copy of the Report. *See* Driscoll Cert., Exh. E; *see also Mag. Op.* at 7. Only then did Cooper acquiesce. *See Mag. Op.* at 7. Although on April 24, 1997, Cooper agreed to surrender the Report, Cooper continued to delay. *See id.* Finally, Cooper sent the Attorney General a copy of the Report on May 14, 1997. *See id.; see also* Driscoll Cert., Exh. C.

Even then Cooper attempted to limit how the State of New Jersey could use the Report in its criminal and civil enforcement investigations. *See* Driscoll Cert., Exh. C and Exh. D (Letter from Assistant Attorney General, Jaynee LaVecchia, Esq., to Gary J. Lesneski, Esq., dated May 14, 1997). First, Cooper submitted the Report with a cover letter asserting the document's confidentiality, and noting its privileged status. *See* Driscoll Cert., Exh. C. Second, Cooper obtained an agreement from the State of New Jersey setting forth procedures to safeguard the Report from public disclosure. *See id.; See also* Driscoll Cert., Exh. D.

The New Jersey Attorney General's Office referred the Report to the Division of Criminal Justice. *See* Driscoll Cert., Exh. E. After completing an initial review for criminal violations, the Division of Criminal Justice forwarded the Report to the Department of Human Services, the Department of Health and Senior Services, and the Civil Law Division of the Attorney General's Office for further review and possible regulatory or statutory enforcement proceedings. *See id.; see also Mag. Op.* at 8. After nearly two months of investigation, the New Jersey Attorney General's Office ultimately determined that there was no evidence of criminal conduct on the part of Cooper. *See* Novack Decl., Exh. B (Defs. Original Brief, Exh. H (Maureen Graham, *N.J. Finds Nothing Amiss at Cooper*, Phila. Inq., July 11, 1997, at A1)).

## II. PROCEDURAL HISTORY

On June 12, 1996, Cooper filed a civil complaint in this Court against defendants, Flex/sys Corporation, Flex/sys Technology Corporation, Flex/sys (New Jersey) Corporation, Flex/sys Data Corporation–Cherry Hill, Donald G. Fellner, and Walter I. Tanenbaum, and defendant, Allan B. Reed, alleging RICO violations arising out of conduct that was part of a joint venture between Cooper and these defendants. *See Cooper Hospital/University Medical Center, et al. v. Flex/sys Corp., et al.,* Civil Action 96–3182(SMO) (Complaint filed June 12, 1996) ("*Flex/sys* action").

Subsequently, on November 6, 1996, Cooper filed a civil complaint against Sullivan, Lashkevich, and the estate of Crispo, alleging claims arising out of the fraud and embezzlement scheme. *See Cooper Hospital/University Medical Center, et al. v. Sullivan, et al.,* Civil Action 96–5416(JEI) (Complaint filed November 6, 1996) ("*Sullivan* action"). The *Sullivan* action was originally assigned to the Honorable Joseph E. Irenas. Cooper later amended the complaint in the *Sullivan* action to include defendants, Elarba Pagan, Helene Weinstein, and Thomas J. Damadio. *See Cooper Hospital/University Medical Center, et al. v. Sullivan, et al.,* Civil Action 96–5416(JEI) (First Amended Complaint filed June 6, 1997). On December 7, 1997, Cooper filed a second amended complaint naming Peat Marwick as a defendant. *See Cooper Hospital/University Medical Center, et al. v. Sullivan, et al.,* Civil Action 96–5416(JEI) (Second Amended Complaint filed December 7, 1997).

Cooper had originally filed a state court complaint against Peat Marwick on March 13, 1997, in the Superior Court of New Jersey, Camden County, Law Division, alleging that Peat Marwick was negligent in failing to discover the defalcations of Sullivan, Lashkevich, and Crispo. *See* Mag. Op. at 6. On August 14, 1997, the Honorable Samuel L. Supnick, Judge of the Superior Court, stayed the state court action and ordered Cooper to join Peat Marwick in the pending federal action. *See id.* at 8. Subsequently, Cooper sought leave to file its second amended complaint. *See id.* at 6–7.

Because Cooper's earlier suit against Flex/sys Corporation, *et al.,* had been assigned to this Court prior to the filing of the related suit against Sullivan, *et al.,* the two actions were consolidated in this Court on May 27, 1998. *See Cooper Hospital/University Medical Center, et al. v. Sullivan, et al.,* Civil Action 96–5416(JEI) (Consolidation Order entered May 27, 1998).

On December 12, 1997, parties to the *Sullivan* action exchanged initial disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure. *See* Mag. Op. at 8. In its initial disclosures, Cooper identified the Report as a privileged document. *See id.* Cooper claimed that the Report was protected by both the attorney-client privilege and the work-product doctrine. Shortly thereafter, Peat Marwick made an application to compel the production of the Report. *See id.* Alan B. Reed, a defendant in the *Flex/sys* action, made a similar application. *See id.* In response, Cooper opposed the joint application to compel production of the Report, arguing that the Report was protected by the work-

product doctrine and the attorney-client privilege. *See id.* at 9. In addition, Cooper filed a cross-application seeking a protective order on the grounds that the Report contained commercially sensitive material which was the product of self-critical analysis.[4] *See id.*

Magistrate Judge Kugler granted the application of defendants, Peat Marwick and Alan B. Reed, to compel Cooper to produce the Report. *See* Mag. Op. and Order (entered May 7, 1998). In addition, Magistrate Judge Kugler denied Cooper's cross-application for a protective order. *See id.* Specifically, Magistrate Judge Kugler found that Cooper had waived the work-product privilege by disclosing the Report to its adversaries, the United States Attorney and the Attorney General of the State of New Jersey. *See* Mag. Op. at 10–16. Magistrate Judge Kugler further found that Cooper had also waived the attorney-client privilege by the same disclosure of the Report. *See id.* at 16–20. Magistrate Judge Kugler denied the cross-application for a protective order because he found that Cooper had failed to demonstrate good cause as required by Rule 26(c)(7) of the Federal Rules of Civil Procedure and *Smith v. BIC Corp.,* 869 F.2d 194, 199 (3d Cir.1989).[5] Magistrate Judge Kugler concluded that Cooper had failed to show what information in the Report was commercially sensitive or how a competitor could misappropriate that information. *See* Mag. Op. at 22. In addition, Magistrate Judge Kugler found that Cooper was not entitled to a protective order on the basis of the self-critical analysis privilege, because Cooper had failed to demonstrate "that the informa-

---

4. Magistrate Judge Kugler separated this argument into two parts: (1) an argument for a protective order based on the commercially sensitive nature of the information contained in the Report; and (2) an argument for a protective order based on the self-critical analysis privilege. *See Mag. Op.* at 21–24. Magistrate Judge Kugler denied Cooper's cross-application for a protective order on both grounds. *See id.* Because Cooper has not appealed from this portion of the Magistrate Judge's opinion and order, I need not address the propriety of this bifurcation of Cooper's argument.

5. The *Smith* court set forth six factors a court may consider when determining whether certain information should be protected as commercially

sensitive proprietary information, a trade secret, or other confidential material. *See Smith,* 869 F.2d at 199. The factors are: (1) the extent to which the information is known outside of the owner's business; (2) the extent to which it is known by employees and others involved in the owner's business; (3) the extent of measures taken by the owner to guard the secrecy of the information; (4) the value of the information to the owner and to his competitors; (5) the amount of effort or money expended by the owner in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *See id.; see also Mag. Op.* at 21.

tion in the Report [was] the type whose flow would be curtailed if discovery were allowed[,] ... [and failed to show] that the information was prepared with the expectation that it would remain confidential." Mag. Op. at 24. Magistrate Judge Kugler stayed his order pending this appeal. See Mag. Op. and Order (entered May 7, 1998).

On May 22, 1998, Cooper filed a Notice of Appeal to this Court pursuant to 28 U.S.C. § 636(c)(4), Rule 72(a) of the Federal Rules of Civil Procedure, and Rule 72.1(c)(2) of the Local Civil Rules. See Plaintiffs' Notice of Appeal (filed May 22, 1998). Specifically, Cooper appeals from that portion of Magistrate Judge Kugler's order "which holds in pertinent part that 'Cooper and the [United States and the State of New Jersey] were adversaries and thus the disclosure to the government resulted in the waiver of any work-product privilege which might have been asserted.'" Id. Cooper contends on appeal, as it did before Magistrate Judge Kugler, that it did not waive the protections of the work product doctrine by disclosing the Report to the United States and the State of New Jersey. See Plaintiffs' Brief in Support of Appeal of Magistrate's Order ("Pls. Brief") at 20–24. Cooper argues that, in spite of the ongoing federal investigation and its confrontations with state officials over the disclosure of the Report, the United States and the State of New Jersey were Cooper's allies, sharing a common, unarticulated interest. See id.

Cooper has not appealed from Magistrate Judge Kugler's finding that Cooper waived any attorney-client privilege it may have had in the Report. Nor has Cooper appealed from the denial of its cross-application for a protective order based on the grounds that the Report contained commercially sensitive material, or the denial of its cross-application

for a protective order based upon the assertion of the self-critical analysis privilege.

In support of its appeal, Cooper argues that Magistrate Judge Kugler's finding that Cooper and the United States and the State of New Jersey were adversaries is clearly erroneous because Magistrate Judge Kugler impermissibly relied upon newspaper articles in making his factual finding. See id.; see also Pls. Brief at 13–24. In opposition, Peat Marwick, joined by defendant, Alan B. Reed, argues that Judge Kugler's finding is not clearly erroneous or contrary to law. See Defendant, Peat Marwick's Brief in Opposition to Plaintiffs' Appeal ("Def. Brief") at 10–30. Peat Marwick also urges this Court to affirm the magistrate judge's order on the independent ground that the work-product doctrine is not implicated because the Report was not primarily prepared in anticipation of litigation. See Def. Brief at 30–33.

### III. STANDARD OF REVIEW

The Federal Magistrates Act of 1968 (the "FMA") created the position now known as magistrate judge and allowed district courts to refer a host of matters to magistrate judges for determinations subject to various levels of review by the district courts. See 28 U.S.C. § 636(b)(1). Congress has amended the FMA several times since 1968 to expand the scope of the duties of magistrate judges in order to alleviate the increased burdens on district courts. See, e.g., H.R. Rep. No. 94–1609 (1976), reprinted in 1976 U.S.C.C.A.N. 6162; see generally 12 Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 3066.

Subparagraph A of § 636(b)(1) provides for a district court to review a magistrate judge's determination of a non-dispositive order, while subparagraph B governs the review of a magistrate judge's report and recommendation concerning a dispositive order.[6]

---

**6.** The FMA provides, in relevant part:

Notwithstanding any provision of law to the contrary—
(A) a judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except [dispositive motions]. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.

(B) a judge may also designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for disposition, by a judge of the court, of any motion excepted in subparagraph (A)
... A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is taken.
28 U.S.C. § 636(b)(1)(A)–(B) (1997).

The Federal Rules of Civil Procedure and the Local Civil Rules of the District of New Jersey each contain corresponding provisions. *See* Fed.R.Civ.P. 72(a), 72(b); Local Civ. R. 72.1(c)(1), 72.1(c)(2). Magistrate Judge Kugler's order compelling Cooper to produce the Report is clearly not dispositive of any claim, and is therefore subject to the provisions of subparagraph A. *See, e.g., Federal Election Comm'n v. The Christian Coalition,* 178 F.R.D. 456 (E.D.Va.1998) (treating magistrate's discovery order as non-dispositive); *Abbott v. United States,* 177 F.R.D. 92 (N.D.N.Y.1997) (same); *cf. Dome Petroleum Ltd. v. Employers Mutual Liability Ins. Co.,* 131 F.R.D. 63, 65 (D.N.J.1990) (Wolin, J.).

The FMA provides that a district court may reverse a magistrate judge's determination of a non-dispositive issue only if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *accord* Fed.R.Civ.P. 72(a); Local Civ. R. 72.1(c)(1); *see, e.g., Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1113 (3d Cir.1986); *see also Lithuanian Commerce Corp. v. Sara Lee Hosiery,* 177 F.R.D. 205 (D.N.J.1997) (Orlofsky, J.).

▇▇▇ Thus, this Court will review a magistrate judge's findings of fact for clear error. *See Lithuanian Commerce Corp.,* 177 F.R.D. at 213; *Lo Bosco v. Kure Engineering Ltd.,* 891 F.Supp. 1035, 1037 (D.N.J.1995). A finding is clearly erroneous only "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Lo Bosco,* 891 F.Supp. at 1037 (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)); *see also Lithuanian Commerce Corp.,* 177 F.R.D. at 213. In reviewing a magistrate judge's factual determinations, a district court may not consider any evidence which was not presented to the magistrate judge. *See Haines v. Liggett Group, Inc.,* 975 F.2d 81, 92 (3d Cir.1992); *Lithuanian Commerce Corp.,* 177 F.R.D. at 213.

▇▇▇ On the other hand, this Court will conduct a *de novo* review of a magistrate

judge's legal conclusions. *See Lithuanian Commerce Corp.,* 177 F.R.D. at 214; *see also Haines,* 975 F.2d at 91 ("the phrase 'contrary to law' indicates plenary review as to matters of law"); *accord Lo Bosco,* 891 F.Supp. at 1037 ("this Court's review is plenary as to matters of law"); *see Campbell v. International Business Machines,* 912 F.Supp. 116, 119 (D.N.J.1996) ("a district court reviews the non-dispositive order of a magistrate judge for legal error or clearly erroneous findings of fact").

▇▇▇ Where a magistrate judge is authorized to exercise his or her discretion, the decision will be reversed only for an abuse of that discretion. *See Lithuanian Commerce Corp.,* 177 F.R.D. at 214; *see also Kresefky v. Panasonic Communications and Systems Co.,* 169 F.R.D. 54, 64 (D.N.J.1996) ("Where, as here, the magistrate has ruled on a non-dispositive matter such as a discovery motion, his or her ruling is entitled to great deference and is reversible only for abuse of discretion."); 12 Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 3069 ("many matters such as discovery scheduling or disputes might better be characterized as suitable for an abuse-of-discretion analysis"). This deferential standard of review is "especially appropriate where the Magistrate Judge has managed this case from the outset and developed a thorough knowledge of the proceedings." *Public Interest Research Group v. Hercules, Inc.,* 830 F.Supp. 1525, 1547 (D.N.J.1993), *aff'd on other grounds and rev'd on other grounds,* 50 F.3d 1239 (3d Cir.1995); *see also Lithuanian Commerce Corp.,* 177 F.R.D. at 214. Consistent with this general principle, "a magistrate's determination in a discovery dispute is entitled to great deference and reversible only for an abuse of discretion." *Dome Petroleum Ltd.,* 131 F.R.D. at 65.

Although this appeal arises out of a discovery dispute over whether Cooper is required to produce the Report, Magistrate Judge Kugler's order compelling Cooper to produce the Report hinges upon the application of the work-product doctrine to the circumstances of this case. Therefore, I will apply the

"clearly erroneous and contrary to law" standard of review.

## IV. DISCUSSION

Cooper advances two arguments in support of its contention that Magistrate Judge Kugler's order, denying its assertion of the work-product privilege on the grounds of waiver and compelling production of the Report, should be overturned. First, Cooper argues that the magistrate judge's finding, that the United States and the State of New Jersey ("State") were Cooper's adversaries at the time the Report was disclosed, was clearly erroneous because it is contrary to the weight of the facts in the record. Second, Cooper argues that the magistrate judge's finding is clearly erroneous because, in making his finding, the magistrate judge relied upon hearsay statements contained in various newspaper articles. In opposition, Peat Marwick argues that Magistrate Judge Kugler's finding was not clearly erroneous, that reliance upon newspaper articles was appropriate, that Cooper's own evidence establishes waiver, and that this Court can affirm the magistrate judge's order on the independent ground that the Report was not primarily prepared in anticipation of litigation. For the reasons set forth below, Magistrate Judge Kugler's order will be affirmed.

### A. The Law Governing Waiver of the Work–Product Privilege

■ As set forth in Rule 26(b)(3) of the Federal Rules of Civil Procedure, the work-product doctrine encompasses a limited evidentiary privilege. The purpose of the work-product doctrine is to promote the adversary system "by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation." *Westinghouse Electric Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1428 (3d Cir.1991). The doc-

trine advances the adversary system because attorneys are free to prepare their cases without fear that their work product will be used against their clients. *Id.* (citing *Hickman v. Taylor*, 329 U.S. 495, 510–11, 67 S.Ct. 385, 91 L.Ed. 451 (1947)). Unlike the attorney-client privilege, the work product doctrine is a qualified privilege which may be overcome by a showing of substantial need. *See Westinghouse*, 951 F.2d at 1429. Like all evidentiary privileges, the work-product privilege is to be strictly construed, consistent with the goals underlying the privilege, namely, advancement of the adversarial system. *See Westinghouse*, 951 F.2d at 1429. In addition, the privilege may be waived. *See id.*

■ The parties do not dispute that the Third Circuit's articulation of the rule governing waiver of the work-product privilege in *Westinghouse Electric Corp. v. Republic of the Philippines*, 951 F.2d 1414 (3d Cir.1991), governs this appeal.[7] Under *Westinghouse*, the work product privilege is waived if disclosure of the material "enable[s] an adversary to gain access to the information." *Westinghouse*, 951 F.2d at 1428 (citation omitted). *Westinghouse* draws a distinction "between disclosures to adversaries and disclosures to non-adversaries." *Id.* Disclosures to non-adversaries do not waive the privilege, while a disclosure to only one adversary "waive[s] the work-product doctrine as against all other adversaries." *Id.* at 1429. Furthermore, a party may not avoid waiver by asserting the retention of the privilege, while at the same time disclosing the material to an adversary. *See id.* at 1430. Reasonable expectations of confidentiality and reliance on confidentiality agreements with an adversary do not prevent waiver of the privilege. *See id.*

This proposition is the mirror image of the analysis presented in *Westinghouse*, 951 F.2d 1414, specifically, that the work-product privilege is waived when information is disclosed to a government entity that is an adversary of the disclosing party. *See id.* at 1428–29. These decisions do not alter the nature of my inquiry. I must still determine whether the United States and the State of New Jersey were adversaries of Cooper.

---

7. Cooper cites *The Republic of the Philippines v. Westinghouse Electric Corp.*, 132 F.R.D. 384 (1990) (Debevoise, J.), *aff'd*, 951 F.2d 1414 (3d Cir.1991), and *Shulton Inc. v. Optel Corp.*, Civil Action No. 85–2925, 1987 WL 19491 (D.N.J. Nov. 4, 1987) (Sarokin, J.), for the proposition that the work-product privilege is not waived when information is disclosed to a government entity that is allied by a common interest with the disclosing party. *See* Pls. Brief at 15–19.

■ In considering whether the disclosure of work-product material to the government constitutes a waiver of the privilege, a court must determine if the disclosure is consistent with the goals of the doctrine, particularly, advancement of the adversary system. *See id.* at 1429. If the disclosing party is the target of an investigation by the government, no matter how reasonable its objectives in disclosing the material may be, the work product privilege is waived because such a disclosure is to an adversary and cannot reasonably further the adversarial process. *See id.*

As Magistrate Judge Kugler correctly determined, the essential inquiry under *Westinghouse* is whether the parties to whom the Report was disclosed, the United States and the State of New Jersey, were adversaries of Cooper. It is this question which forms the crux of this appeal.

### B. The Magistrate Judge's Finding Was Not Clearly Erroneous

Cooper argues that the facts of record establish that it was an ally of the United States and the State, not an adversary, and that any finding to the contrary is clearly erroneous, particularly if that finding is the result of reliance on hearsay statements contained in newspaper articles. I hold that this argument lacks merit because, after considering the entire record, I am not left with a firm conviction that Magistrate Judge Kugler made a mistake. *See Lithuanian Commerce Corp.*, 177 F.R.D. at 213. On the contrary, the evidence of record establishes that Cooper was the target of a State investigation into the misuse of public funds, and that Cooper was also the likely target of a federal investigation into possible violations of federal securities laws.

### 1. The Magistrate Judge's Reliance Upon Newspaper Articles

Magistrate Judge Kugler's consideration of newspaper articles in determining whether the United States and the State of New Jersey were Cooper's adversaries was entirely proper. First, Magistrate Judge Kugler was not bound by the prohibitions contained in the Federal Rules of Evidence against the use of hearsay when making a determination regarding the existence and waiver of the work-product privilege. Second, Cooper itself relied upon newspaper articles in support of its opposition to Peat Marwick's motion to compel the production of the Report, thereby waiving this objection.

Rule 104(a) of the Federal Rules of Evidence provides, in relevant part, that "[p]reliminary questions concerning . . . the existence of a privilege . . . shall be determined by the court[,] . . . [and][i]n making its determination [the court] is not bound by the rules of evidence except those with respect to privileges." Fed. R. Ev. 104(a). "Whether particular materials meet the requirements of the work product doctrine is a common preliminary question that must be resolved by the [court] under Rule 104(a)." 1 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence,* § 104.13[8] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed.1997). When making a preliminary determination under Rule 104(a), a judge may rely upon a hearsay statement, giving "it appropriate weight based on his or her judgment and experience." *Weinstein's Federal Evidence,* § 104.11[1][a].

■ In making his finding that the United States and the State were Cooper's adversaries, Magistrate Judge Kugler was making a preliminary determination about the existence and waiver of the work-product privilege. Pursuant to Rule 104(a), Magistrate Judge Kugler was not bound by the Federal Rules of Evidence in making this determination. Reliance upon the hearsay statements contained in the various newspaper articles that both parties submitted as exhibits in support of and in opposition to the motion to compel was entirely proper.

■ Moreover, Cooper itself submitted a newspaper article in support of its opposition to the motion to compel. *See* Driscoll Cert., Exh. E (Maureen Graham, *Hospital Gives State Its Audit,* Phila. Inq., May 14, 1997, at B1). In particular, Cooper submitted the newspaper article as evidence of its cooperation with the State's criminal and civil enforcement investigations. *See* Driscoll Cert., ¶ 24. In an effort to persuade Magistrate

Judge Kügler that the State and Cooper were not adversaries, Cooper clearly intended that he rely upon the article's contents, in conjunction with the certification of Peter E. Driscoll, the chairman of Cooper's Board of Trustees. Cooper now appeals on the ground that Magistrate Judge Kugler considered newspaper articles in finding that the State and Cooper were adversaries. Cooper cannot have it both ways. Surely, by advocating that the magistrate judge rely upon its proffered newspaper article, Cooper has waived any objection to the magistrate's consideration of Peat Marwick's proffered newspaper articles.

Furthermore, the cases Cooper cites in support of its argument that the magistrate judge's reliance upon newspaper articles was improper are clearly inapplicable to this case. Cooper cites three cases: *Horta v. Sullivan,* 4 F.3d 2 (1st Cir.1993); *New England Mutual Life Ins. Co. v. Anderson,* 888 F.2d 646 (10th Cir.1989); and *Hanson v. Beloit Newspapers, Inc.,* Civil Action No. 94–4023, 1995 WL 646808, *1 (D.Kan. Sept. 15, 1995). These cases do not address a court's ability to rely upon hearsay statements during a Rule 104(a) preliminary determination. Rather, both *Horta* and *Hanson* address the impropriety of a court's reliance upon hearsay when considering summary judgment motions, an issue governed by the explicit language of Rule 56 of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 56. *Anderson* concerns the impermissible use of a newspaper article at trial. The rules prohibiting the use of hearsay statements in these situations simply do not apply to a court's preliminary determinations under Rule 104(a). *See* Fed.R.Civ.P. 56; Fed. R. Ev. 802; *see also Weinstein's Federal Evidence,* §§ 104.11[1][a], 104.13[8].

■ Moreover, Cooper never argued before the magistrate judge that consideration of newspaper articles in determining the existence and waiver of the work-product privilege was improper. Because the magistrate judge was not afforded an "opportunity to rectify his own alleged errors," I also find that Cooper waived its right to present such an objection on appeal. *See Lithuanian Commerce Corp.,* 177 F.R.D. at 209.

Therefore, Cooper's argument that Magistrate Judge Kugler's consideration of newspaper articles was clear error is without merit.

### 2. Cooper's Own Exhibits Support a Finding that the State of New Jersey Was Cooper's Adversary

■ In support of its opposition to Peat Marwick's motion to compel production of the Report, Cooper included exhibits relating to its disclosure of the Report to the State. These exhibits include the May 14, 1997, cover letter under which Cooper submitted the Report to the State; the State's May 14, 1997, letter to Cooper's then-counsel regarding confidentiality issues surrounding the Report; and a Philadelphia Inquirer article from May 14, 1997, reporting on Cooper's disclosure of the Report to the State. *See* Driscoll Cert., Exhs. C, D, E. These exhibits amply support Magistrate Judge Kugler's finding that the State was Cooper's adversary at the time the Report was disclosed to the State.

On March 24, 1997, the New Jersey Department of Human Services and the New Jersey Department of Health and Senior Services requested a copy of the Report from Cooper. *See* Driscoll Cert., Exh. C. At the same time, Governor Whitman stated publicly that any failure by Cooper to turnover the Report could jeopardize future Medicaid payments from the State to Cooper. *See* Driscoll Cert., Exh. E. The Report was sought by the State in connection with its investigation into possible overcharges billed to Medicaid and other state-funded programs. *See* Driscoll Cert., Exh. E.

For a month, Cooper resisted the State's request by claiming that the Report was protected by the attorney-client privilege. *See Mag. Op.* at 7. On April 23, 1997, the Attorney General for the State of New Jersey intervened on behalf of the State agencies requesting the Report, and demanded that Cooper surrender the Report. *See id.* Immediately thereafter, Cooper agreed to produce the Report to the New Jersey Attorney General. *See id.; see also* Driscoll Cert., Exh. C. Cooper, however, did not turn over

the Report at that time. *See* Driscoll Cert., Exh. C. Rather, for nearly three weeks, Cooper negotiated with the State, in an effort to obtain a confidentiality agreement. *See id.* Cooper finally produced the Report on May 14, 1997, only after the State and Cooper reached an agreement. *See* Driscoll Cert., Exh. D.

Cooper's cover letter of May 14, 1997 to the State which enclosed the Report stated that Cooper "assert[ed] three identifiable privileges with regard to the documents: attorney-client, work-product, and self-critical evaluation." Driscoll Cert., Exh. C. The letter further stated that "delivery of the documents [was] not intended to be ... construed as a waiver of any privilege or assertion of confidentiality." *See id.* These assertions notwithstanding, on the same day that Cooper produced the Report, a spokesman for the Attorney General's Office stated publicly that the Report would be reviewed as part of a criminal investigation. *See* Driscoll Cert., Exh. E.

Clearly, when confronted with the potential loss of Medicaid funding and a criminal investigation of its handling of state funds, Cooper cannot seriously argue that it was an ally of the State, sharing a common interest. On the contrary, this evidence establishes that the State was Cooper's adversary at the time the Report was surrendered. Furthermore, the record contains no evidence which contradicts the magistrate judge's finding that Cooper was the target of the State's investigation into the mishandling of state funds. Therefore, Magistrate Judge Kugler's finding that the State was Cooper's adversary at the time the Report was disclosed is not clearly erroneous.

The fact that Cooper attempted to preserve the work-product privilege in its letter of transmittal and confidentiality agreement with the State does not alter this conclusion.[8] *See Westinghouse*, 951 F.2d at 1430–31 (distinguishing inadvertent disclosure to an adversary from voluntary disclosure to an adversary, the latter being a waiver of the work-product privilege regardless of the dis-

closing party's reasonable expectation to the contrary).

Accordingly, because Cooper voluntarily disclosed the Report to one adversary, Cooper waived the work-product privilege as to all adversaries, including Peat Marwick and Alan B. Reed. *See id.* at 1429. Therefore, Magistrate Judge Kugler's order compelling Cooper to produce the Report will be affirmed.

3. *The Totality of the Facts in the Record Support a Finding that the United States Was Cooper's Adversary*

■ Magistrate Judge Kugler determined that the United States, in addition to the State of New Jersey, was Cooper's adversary at the time the Report was disclosed to the United States Attorney. This finding is not clearly erroneous.

The newspaper accounts, properly considered by the magistrate judge, *see* Section IV.B.1 *supra*, establish that Cooper was aware that it was the target of a federal investigation into possible violations of federal securities laws stemming from the prospectus released in conjunction with Cooper's $69.4 million bond offering. *See, e.g.*, Novack Decl., Exh. B (Defs. Original Brief, Exh. I (Jim Walsh, *Cooper Gives Feds Report on Fraud*, Courier–Post, March 13, 1997, at 1A), and Exh. G (Jim Walsh, *FBI Review Cooper Data*, Courier–Post, March 7, 1997, at 1A)). It was not until March 12, 1997, after the prospectus was issued, the bonds sold, and the prospectus was obtained by federal agents from the Camden County Improvement Authority, that Assistant United States Attorney, Paul Zoubek, received a copy of the Report from Cooper. *See* Driscoll Cert., Exh. B. The cover letter accompanying the disclosure of the Report to the United States Attorney states that Cooper was cooperating with the federal investigation "to avoid any suggestion (including that by some of the media) that Cooper is withholding any information...." *See id.*

Even if the March, 1997, federal investigation was part of an on-going federal investi-

---

8. Cooper's similar attempt to retain the work-product privilege after disclosing the Report to the United States Attorney is equally fruitless. *See* Section IV.B.3 *infra*.

gation of the fraud and embezzlement scheme perpetrated by Sullivan, Lashkevich and others, as Cooper suggests, given the events of February and March, 1997, discussed above, Cooper cannot reasonably argue that it did not know that the scope of the federal investigation had been enlarged to include Cooper itself, and not just a few errant, dishonest employees. In deciding that Cooper and the United States were adversaries at the time Cooper surrendered the Report to the United States Attorney, Magistrate Judge Kugler made a reasonable finding based firmly upon the facts of the record. Therefore, because I am not left with a "firm conviction" that Magistrate Judge Kugler mistakenly found Cooper and the United States to be adversaries, such a finding is not clearly erroneous. Indeed, I am left with the "firm conviction" that Magistrate Judge Kugler's finding was clearly correct.

Accordingly, because the magistrate judge's predicate finding, that the United States and the State of New Jersey were Cooper's adversaries at the time the Report was disclosed, is not clearly erroneous, the magistrate's subsequent finding that Cooper waived the work-product privilege as to all adversaries is not clearly erroneous or contrary to law. Therefore, Magistrate Judge Kugler's order compelling Cooper to produce the Report will be affirmed.

### C. Cooper May Not Avail Itself of the Protections of the Work–Product Doctrine Because the Report Was Not Prepared Primarily in Anticipation of Litigation

Because Magistrate Judge Kugler found that Cooper's disclosure of the Report to the United States and the State of New Jersey waived any work-product protections that Cooper may have had in the Report, he did not address the question of whether the Report satisfied the requirements of the work-product doctrine so as to cloak the document with the privilege. Magistrate Judge Kugler, however, did opine that it was unlikely that the Report would qualify for work-product doctrine protections. See Mag. Op. at 14 (stating that "[t]he statements of Cooper itself demonstrate that only one of the goals of

the Report was to identify legal remedies available to [Cooper], not the *primary* focus") (emphasis in original). I hold that Magistrate Judge Kugler's order compelling production of the Report must also be affirmed on the independent ground that the Report was not prepared primarily in anticipation of litigation.

■ In order to receive the protection of the work-product doctrine, a document must have been prepared primarily in anticipation of litigation. See United States v. Rockwell International, 897 F.2d 1255, 1265 (3d Cir. 1990); see also Fed.R.Civ.P. 26(b)(3). The anticipated litigation need not be imminent, "as long as the *primary motivating purpose* behind the creation of the document was to aid in possible future litigation." Id. (quoting United States v. El Paso Co., 682 F.2d 530, 542–43 (5th Cir.1982)) (internal quotations and citations omitted) (emphasis added).

■ Cooper charged the Committee responsible for drafting the Report in July, 1994. The Committee's charge was contained in a Mission Statement/Charge which established the following duties for the Committee:

> The [Committee] has been charged by the Board of Trustees ... with the task of determining, with particularity as to scope, individuals or entities involved, any and all irregularities or defalcations which may have occurred, to review existing organization and controls and offer recommendations for changes in such controls and organizations, if appropriate; and to recommend the commencement of appropriate legal activity to seek full restitution of any and all funds stolen or misappropriated.... Clearly, it is the mission of the [Committee] to strengthen internal and external confidence ... and to assure ... that Cooper is now under Control.... At the completion of its work, the [Committee] will issue a report....

See Novack Decl., Exh. E (Defs. Original Reply Brief, Exh. A). Furthermore, Cooper's press release issued on July 26, 1994, stated that the purpose of the Committee was to regain public confidence, "review and

examine all internal control procedures governing the financial operations of the medical center[,]" and recommend "appropriate legal action...." *See* Novak Decl., Exh. B (Defs. Original Brief, Exh. C).

Cooper's Mission Statement/Charge makes it clear that, even though one of the Committee's duties was to make recommendations as to possible future legal action, the primary motivation for drafting the report was not in anticipation of litigation. Litigation was merely one of many stated goals which prompted the creation of the Committee and the drafting of the Report. Therefore, I conclude that the Report does not satisfy the basic requirement which must be established for the work-product doctrine to apply, namely, that the document must have been prepared primarily in anticipation of litigation. Accordingly, Magistrate Judge Kugler's order compelling Cooper to produce the Report will be affirmed on the alternative ground that the work-product privilege does not apply to the Report.

### D. *Correspondence from Counsel for Cooper*

On September 15, 1998, Michael M. Rosenbaum, Esq., counsel for Cooper, wrote to the Court advising that Cooper would "releas[e] the Report of the [Committee] not later than the second week in October." *See* Letter to the Court from Michael M Rosenbaum (dated Sept. 15, 1998). Mr. Rosenbaum further stated that "the appeal of Magistrate [Judge] Kugler's decision will be mooted ... [and] we respectfully request that Your Honor withhold the issuance of any Opinion—because of its mootness." *See id.*

On October 5, 1998, Richard S. Hyland, Esq., counsel for Peat Marwick, wrote the Court vigorously opposing Mr. Rosenbaum's suggestion that the Court withhold its decision, and contesting the mootness of the appeal. *See* Letter to the Court from Richard S. Hyland, Esq. (dated Oct. 5, 1998). On October 7, 1998, I wrote to Mr. Hyland in response to his letter, stating: "[S]ince Mr. Rosenbaum's letter of September 15, 1998, indicates that his client authorized him to 'advise me that it will be releasing the report,' I see no need to intervene at this point.

I have every reason to believe that Mr. Rosenbaum will honor his representation contained in his letter that the report will be released." Letter of the Court to Richard S. Hyland, Esq. (dated Oct. 7, 1998).

For the first time, on October 8, 1998, co-counsel for Cooper, Terrence W. Camp, Esq., informed the Court that Cooper would release the Report only under a "protective order providing for confidentiality." *See* Letter to the Court from Terrence W. Camp, Esq. (dated Oct. 8, 1998). Mr. Camp wrote that on "the morning of the day on which Peat Marwick directed its recent letter to Your Honor, we offered to promptly produce the Report, its exhibits and 16,000 pages of underlying documents over which Cooper has asserted privileges in exchange for a permanent protective order against public disclosure or comment by Peat Marwick." *See id.* Furthermore, Mr. Camp stated that "Cooper has neither abandoned nor withdrawn its appeal to Your Honor from Magistrate Judge Kugler's opinion." *See id.* In addition, Mr. Camp stated that Cooper was prepared to file a motion for a protective order "to resolve the issues surrounding confidentiality[, and that] [t]his motion will precede the Report's release and is expected to be filed shortly." *See id.*

Struck by the incongruity between the September 15, letter from Mr. Rosenbaum and the October 8, letter from his colleague, Mr. Camp, on October 9, 1998, I conducted a telephone conference call on the record with counsel. During the conference call, it became obvious to me that Cooper had no intention of releasing the Report to Peat Marwick without a protective order, even though no such requirement was discussed in Mr. Rosenbaum's September 15, 1998 letter to me. I informed counsel for Cooper that, assuming I were to affirm Magistrate Judge Kugler's order, any motion for a protective order should be filed directly with me. I further informed counsel for both parties that I would decide the pending appeal within one week.

On October 13, 1998, co-counsel for Cooper, David J. Novack, Esq., informed the Court that Cooper now intended to release the Report to Peat Marwick on November 3,

1998. *See* Letter to the Court from David J. Novack, Esq. (dated Oct. 13, 1998). Mr. Novack stated that "[counsel for Cooper] have proposed to counsel for Peat Marwick a new compromise[;][w]e offered to produce the Report immediately in exchange for a confidentiality order which would expire on May 3, 1999." *See id.* This letter makes it quite clear that Cooper will seek a protective order in this Court upon the filing of this opinion and order. This was confirmed by Mr. Camp's letter to the Court of October 12, 1998, stating that "we assume that Your Honor's order will not require immediate production of the report so that Cooper will have the ability to file a motion addressed to that ruling." Letter to the Court from Terrence W. Camp, Esq. (dated Oct. 12, 1998).

The statements of Cooper's counsel that a motion for a protective order will be filed in this Court immediately upon the entry of this Opinion and Order, are curious in light of the record below. Cooper made an application for a protective order before Magistrate Judge Kugler. *See* Section II *supra.* That application was denied, and Cooper did not appeal that portion of the magistrate judge's order. *See* Mag. Op. at 20–24; *see also* Plaintiffs' Notice of Appeal (filed May 22, 1998). Cooper's counsel has now informed the Court that Cooper will move for a protective order if I affirm Magistrate Judge Kugler's order compelling disclosure of the Report on, as yet, unspecified grounds. Although, I intimate no opinion regarding the merits of a motion not yet before me, the fact that Cooper has not appealed the denial of its previous application for a protective order raises the question of whether a second application for a protective order based upon grounds not advanced before Magistrate Judge Kugler has been waived. *See Lithuanian Commerce Corp. v. Sara Lee Hosiery,* 177 F.R.D. 205, 209–213 (D.N.J.1997) (Orlofsky, J.) (holding that any argument not first addressed to the magistrate judge may not be raised before the district court for the first time on appeal because it was waived).

Finally, I am compelled to comment upon what appears to be the dilatory tactics of Cooper's counsel. Relying upon the written representations of an officer of this Court, Mr. Rosenbaum, as set forth in his letter to me, dated September 15, 1998, I rejected the concerns of Mr. Hyland which he conveyed to me in his letter of October 5, 1998. As the October 8, 12, and 13 letters of counsel for Cooper make quite clear, Mr. Hyland's concerns were well founded. Any further attempts by counsel for Cooper to delay or protract these proceedings will not be tolerated by this Court.

## V. CONCLUSION

For the reasons set forth above, Magistrate Judge Kugler's order compelling Cooper to produce the Report will be affirmed. Consequently, the application of defendants, Peat Marwick and Alan B. Reed, to compel discovery of the Report is granted. The magistrate's stay of his order pending this appeal is vacated, however, to afford Cooper an opportunity to move for a protective order before this Court, I shall stay my order compelling production of the Report for a period of fifteen days from the receipt of this Opinion and the accompanying Order.

Cooper shall serve and file its motion for a protective order with this Court within five days of receipt of this Opinion and Order. The responsive papers of Peat Marwick and Alan B. Reed shall be filed and served within five days thereafter. The parties are specifically directed to address in their memoranda of law in support of and in opposition to Cooper's motion for a protective order the issue of waiver discussed in Section IV.D of this opinion. The Court will enter an appropriate order.

## ORDER

This matter having come before the Court on an appeal by Plaintiffs/Appellants, Cooper Hospital/University Medical Center, Cooper Healthcare Services, Inc., and Cooper Data Services Corporation ("Cooper"), from an order entered by the Honorable Robert B. Kugler, United States Magistrate Judge, compelling Cooper to produce a document entitled "Report of the Ad Hoc Internal Control Committee of the Board of Trustees: The Cooper Health System" ("Report"), Michael M. Rosenbaum, Esq., David J. Novack,

Esq., and Terrence W. Camp, Esq., Budd, Larner, Gross, Rosenbaum, Greenberg & Sade, P.C., appearing for Plaintiffs/Appellants, and Richard S. Hyland, Esq., John W. Frazier, IV, Esq., and John E. Caruso, Esq., Montgomery, McCracken, Walker & Rhoads, LLP, appearing for Defendant/Appellee, KPMG Peat Marwick, LLP ("Peat Marwick"), and Elliott Abrutyn, Esq., and Joseph G. Dolan, Esq., of Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, appearing for Defendant/Appellee, Alan B. Reed; and,

The Court having considered the submissions of the parties, and the record below, for the reasons set forth in the Court's OPINION, filed concurrently with this ORDER;

IT IS, on this 15th day of October, 1998, hereby ORDERED that the order of the magistrate judge compelling Cooper to produce the Report is AFFIRMED; and,

IT IS further ORDERED that the application of the Defendants/Appellees to discover the Report is GRANTED; and,

IT IS further ORDERED that the magistrate judge's stay of his order pending this appeal is VACATED; and,

IT IS further ORDERED that this Order shall be stayed for a period of fifteen days. If Cooper intends to seek a protective order from this Court regarding the disclosure of the Report, Cooper shall serve and file its moving papers with this court within five days from the receipt of this ORDER. Defendants/Appellees shall serve and file their responsive papers with this Court within five days thereafter.